IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOSEPHINE DELOACH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br>    Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | CIVIL NO. 3:10CV364 |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Josephine Deloach, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 18) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on August 20, 2008 and DIB on July 23, 2008, claiming disability due to severe multiple trauma injuries from an auto accident, with an alleged onset date of June 28, 2008. (R. at 128-37, 161.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 61-62, 65-77; 87-96.) On September 2, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 18-45.) On September 22, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 9-17.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d),

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability.  (R. at 12.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of residual effects of multiple upper extremity and lower extremity fractures from a motor vehicle accident in June 2008 and degenerative disc disease of the lumbar spine, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 12-13.)  The ALJ next determined that Plaintiff had the RFC to perform sedentary work except that she could only reach overhead occasionally; she could not climb ropes, ladders, or scaffolds; she could not work around unprotected heights; she could occasionally climb, bend, balance, stoop, kneel, crouch, and/or crawl; she is limited to simple, routine tasks with short, simple instructions; and she is able to do frequent, but not constant, handling, reaching, fingering, and grasping.  (R. at 13-15.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a nurse's assistant because of the level of exertion required.  (R. at 15-16.)  At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 16-17.)

6

Specifically, the ALJ found that Plaintiff could work as an ink printer, a call out operator, or a surveillance system monitor. (R. at 16-17.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians and her own complaints of pain; (2) the ALJ erred by failing to include all of Plaintiff's limitations in the given RFC; (3) the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations; and (4) Plaintiff cannot perform the occupations identified by the VE . (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 20-33.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 12-20.)

### A. Plaintiff contends that the ALJ erred in discounting the opinions of the treating physicians and Plaintiff's complaints of pain.

Plaintiff contends that the ALJ "irrationally disregarded the consistent opinion" of her treating physician, Dr. Mark Willis. (Pl.'s Mem. at 21-22.) Plaintiff asserts that the ALJ failed to weigh the medical opinions according to the evidence of record and pursuant to the mandate of Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006), and that if the ALJ had properly weighed the opinions, "a rational person would have no option but to give" great weight to such. (Pl.'s Mem. at 22.) Plaintiff further contends that the medical evidence of record and her own written reports and statements are consistent with Dr. Willis's opinion. (Pl.'s Mem. at 23-25.)

7

### a. The ALJ properly assessed Plaintiff's treating physician's opinion.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

As noted in Hines, the case Plaintiff relies on to support her argument that the ALJ improperly assessed her treating physicians' opinions, "[t]he treating physician rule is not absolute. An ALJ 'may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.'" 453 F.3d at 559 (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In this case, the ALJ found that persuasive evidence existed to contradict Drs. Willis and Lewis's opinions that Plaintiff was only capable of performing less than sedentary work. However, the ALJ did not entirely disregard such opinions. The ALJ afforded Dr. Lewis's opinion moderate weight even though it was "not supported by any treatment records." (R. at 15.) Moderate weight was also assigned to Dr. Willis's opinion, which was markedly similar to Dr. Lewis's opinion. (R. at 15.)

Dr. Lewis[6] completed a "check-box" Work Related Limitations form on August 15, 2009. (R. at 347-51.) He opined that Plaintiff could only lift/carry five pounds occasionally; could stand/walk for three hours total and ten minutes without interruption; could sit for twenty minutes without interruption; could never climb, balance, stoop, crouch, kneel, crawl, push, or pull; was limited in reaching, handling, fingering, and feeling because her residual pain made it difficult to handle objects; she had no environmental, visual, or communicative restrictions; and she was capable of performing less than sedentary work. (R. at 347-51.)

---

[6] The ALJ noted that it was unclear whether Dr. Lewis was a treating physician, as no treatment records were submitted supporting his opinion. (R. at 15.) The ALJ also expressed uncertainty about whether Dr. Lewis was even a physician at all, as opposed to a physician's assistant or nurse. (R. at 15.) The ALJ erred on the side of caution and treated his opinion as that of a treating physician. (R. at 15.) After a review of the record, the Court notes that the record establishes that Dr. Lewis is indeed a physician. (R. at 352 ("Referring physician: Lewis MD, Augustine W.").)

9

Dr. Willis also completed a "check-box" Work Related Limitations form on August 27, 2009, approximately nine months after Plaintiff's last documented treatment with him. (R. at 324, 354-58.) Dr. Willis opined that Plaintiff could only lift/carry five pounds for four to five minutes; could stand/walk for two hours total and ten minutes without interruption; could sit for four to five hours total and twenty minutes without interruption; was limited in reaching and handling because her right elbow was essentially fused; did not have any fingering or feeling limitations; should not work around heights or operate equipment due to her limited mobility; should elevate her feet several times a day for five to ten minutes each time; and was limited to less than sedentary work. (R. at 354-58.)

Though the ALJ did not accept the physicians' conclusions that Plaintiff's impairments rendered her incapable of performing sedentary work, the ALJ did credit the opinions to a certain extent. The ALJ did not credit Dr. Willis's opinion that Plaintiff could only sit for five hours in an eight-hour workday, noting that such a limitation was not consistent with Dr. Willis's treatment notes. (R. at 15.) Dr. Willis noted in October 2008, approximately ten months prior to his opinion of Plaintiff's abilities, that Plaintiff had recovered very well from her pelvic fracture and had continued to improve since her accident. (R. at 15, 325.)

The ALJ credited most of the limitations suggested by Plaintiff's treating physicians. The ALJ advised that Plaintiff could only reach overhead occasionally; could not work around unprotected heights; could never climb ropes, ladders, or scaffolds; and could do frequent but not constant handling, reaching, fingering and grasping. (R. at 13.) Such limitations are consistent with the opinions of the treating physicians. (R. at 347-51, 354-58.) The ALJ did not credit the imposed sitting restrictions or the opinion that Plaintiff needed to elevate her feet several times a

10

day for five to ten minutes; and partially credited the climbing, bending, balancing, stooping, kneeling, crouching, and crawling limitations, finding that she could only occasionally perform such activities. (R. at 13, 347-51, 354-58.) The ALJ also did not mention any restrictions regarding the operation of equipment, instead noting Plaintiff's limitations to frequent but not constant handling, reaching, fingering, and grasping. (R. at 13, 354-58.)

As to the few portions of the treating physicians' opinions that the ALJ did not credit, the remaining medical evidence of record supports the ALJ's conclusion that Plaintiff was capable of performing sedentary work, albeit with certain limitations. Though Plaintiff was involved in a serious car accident, from which she suffered multiple injuries, her treatment records indicate that she demonstrated improvement over time. Indeed, the state agency physicians recommended denial of Plaintiff's disability applications, not because she did not suffer from severe injuries, but because they opined that her injuries would not last for the durational requirement of twelve months. (R. at 311-17, 342-43.) It should also be noted that the ALJ did not accept the state physicians' RFC assessment. The state physicians opined that Plaintiff should be capable of performing light work, yet the ALJ credited many of Plaintiff complaints and the recommendations of her physicians in finding that she could only perform sedentary work with some exceptions. (R. at 13-15, 311-17, 342-43.)

In October 2008, four months after Plaintiff's accident and after performing three surgeries on Plaintiff, Dr. Willis indicated in treatment records that Plaintiff had recovered very well from her pelvic fracture, that she had suffered a severe injury and would need therapy, that her right elbow would likely fuse and she would be limited in that extremity and accordingly unable to carry anything with her right arm, and that Plaintiff would not ever be able to perform

11

anything more than seated, sedentary type activity. (R. at 222-25, 260-63, 268-69, 325.) At that point, Plaintiff had successfully returned to weight-bearing, though she could only ambulate a few feet at a time. (R. at 325.) Plaintiff had also begun physical therapy, with her therapist noting that her rehabilitation potential was "good," and he recommended a program duration of one hundred days. (R. at 292-93.) Also in October 2008, a prescription pad note signed by Dr. Willis indicated that Plaintiff would be unable to work for one year, could not lift or carry, and could not effectively ambulate. (R. at 304.) However, just two weeks later, records froma physical therapy clinic indicate that Plaintiff ambulated into the clinic without an assistive device, though she walked with an antalgic gait. (R. at 308-10.) It was also noted that Plaintiff obtained occasional relief with her medications. (R. at 308-10.) The therapist anticipated that Plaintiff's goals to return to her previous levels of functioning ("PLOF") and to perform her activities of daily living ("ADL") in a safe and pain free manner could be achieved with six to eight weeks of therapy. (R. at 308-10.) Approximately one month later, in what is the final treatment record from Dr. Willis (or any other physician), it was noted that Plaintiff could ambulate but walked with an antalgic gait, and that she should continue weight-bearing as tolerated on her bilateral lower extremities. (R. at 324.) No mention was made of a need for Plaintiff to elevate her feet. Other than a letter dated December 5, 2008 from a physical therapy clinic, which indicated that Plaintiff was currently receiving therapy, and x-ray requests dated August 27, 2009, there are no further treatment records. (R. at 307, 352-53.) The x-ray requests from August 2009 do not include diagnostic results. (R. at 352-53.)

Substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing sedentary work. As the ALJ noted, the treatment records indicate that Plaintiff was recovering

well and had continued to improve since her accident. (R. at 15.) Further, there are no medical treatment records after November 2008. Without such, the opinions of Drs. Lewis and Willis cannot be assigned controlling weight, as they are not well-supported. Though Dr. Willis is an orthopedic specialist and surgeon, this alone does not change the fact that Plaintiff did not submit substantial evidence supporting his restricting opinion issued nine months after the last documented treatment. (R. at 324, 354-58.) Instead, the medical evidence of record points to a rather successful road to recovery for Plaintiff, and there is no evidence demonstrating that Plaintiff suffered significant setbacks in her recovery that would preclude her from being able to perform sedentary activities. Plaintiff was afforded ample opportunity to supplement the medical record, and she chose not to do so. Accordingly, it is this Court's recommendation that the ALJ's conclusion regarding Plaintiff's treating physicians' opinions be affirmed.

### b. The ALJ's credibility analysis is supported by substantial evidence.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR

96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which

14

could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, although the ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of such were not credible to the extent they were inconsistent with the given RFC. (R. at 14.) As noted earlier, medical records did not substantiate the severity of Plaintiff's pain and symptoms. (R. at 14.) However, though the ALJ did not entirely credit Plaintiff's allegations, the ALJ did accept that she could no longer perform medium to heavy exertion, or her past relevant work. (R. at 15-16.) Further, the ALJ credited Plaintiff's allegations in limiting her to only sedentary work, whereas state physicians opined that she would be able to perform light work. (R. at 15, 311-17, 342-43.) It should also be noted that the state physicians found Plaintiff to be "fully credible" and denied her claims solely based on the durational requirement. (R. at 316-17.)

Plaintiff testified that she applied for unemployment benefits[7] "a while ago" but could not remember when. (R. at 24.) She stated that she had to see a trauma physician now because she was experiencing more headaches, though she could not remember who the doctor was. (R. at 22, 26.) She also testified that she mostly stays in bed all day; that she tries to perform some household chores with her left hand since she has limited use of her right arm; that she takes

---

7 An individual must hold himself out as ready, willing, and able to accept employment if available to be eligible for unemployment benefits. See Myers v. Barnhart, 57 Fed. Appx. 990, 997 (3d Cir. 2003) (citing Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997)). A claim for such benefits is inconsistent with a claim for disability benefits, for which an individual must represent that he is unable to perform any SGA.

medications all day; that her pain was just "average old pain"[8] before her accident, but now averaged a 6-7 on a 1-10 scale; that her pain was primarily in her right arm but also in her hips, legs, back, left side, shoulders, neck, and top of her head; and that her medications make her drowsy and do not always relieve her pain. (R. at 26-29.) Plaintiff also claimed that she was depressed but had not sought treatment, nor had she mentioned such to her physician. (R. at 30-31.) Plaintiff also stated that she continued to see both Drs. Willis and Lewis; though as mentioned earlier, there are no treatment records supporting this allegation even though the ALJ invited Plaintiff to submit such. (R. at 26, 35.) Plaintiff further alleged that the only thing that relieves her pain is to take medications and "relax and lie down," and that the pain medications do not work when she attempts to perform chores. (R. at 36.)

Though Plaintiff alleged that she takes several pain medications which cause her to suffer side effects, there are no medical records which document complaints of side effects from such medications. (Pl.'s Mem. at 27-28.) However, the ALJ did limit Plaintiff to unskilled work entailing only simple, routine tasks with short, simple instructions. (R. at 13.) Furthermore, the Fourth Circuit has recognized that "'[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'" Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (quoting Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)). No such credible evidence exists here.

---

8 It is notable that Plaintiff testified that she suffered only from "average old pain" before her accident, yet she applied for disability benefits based upon back pain and headaches before her accident as recently as 2005. (R. at 28, 47-55.) Such a statement lends doubt to Plaintiff's current claims of disabling pain.

16

Plaintiff simply has not presented substantial evidence supporting her allegations of disabling pain and symptoms. The last treatment record is dated November 2008 and Plaintiff has failed to present any further records, though she claims she continues to receive treatment from at least two physicians. This Court does not doubt, as the ALJ did not, the severity of Plaintiff's injuries as a result of her accident in June 2008. However, at the same time, the Court must conclude that substantial evidence supports the ALJ's decision. Plaintiff's treatment records indicate that she demonstrated improvement, and Plaintiff has not submitted sufficient evidence to suggest otherwise. Her allegations that she has limited use of her right arm are consistent with treatment records and Dr. Willis's opinion that she would be limited in the use of such. (R. at 27, 29, 325, 354-58.) The ALJ credited this limitation as suggested by Dr. Willis, in that she is limited in her ability to reach overhead and to perform handling, reaching, fingering, and grasping. (R. at 13-15, 354-58.) However, her claims that she mostly stays in bed all day and suffers debilitating side effects from her medications simply are not supported by the evidence of record. Accordingly, this Court recommends that the ALJ's credibility analysis be affirmed.

> **B. The ALJ included all of Plaintiff's substantially supported limitations in the RFC analysis.**

As noted earlier, substantial evidence supports the ALJ's decisions to assign moderate weight to the treating physicians' opinions and to find Plaintiff not entirely credible. Because of such findings, and because the ALJ considered all evidence of record in making the RFC determination, Plaintiff's contention that the ALJ failed to include all of her limitations in the RFC is without merit.

### C. The ALJ presented all of Plaintiff's limitations to the VE.

Plaintiff asserts that the ALJ did not present all of Plaintiff's limitations to the VE in the hypothetical, namely that Plaintiff was limited to simple, routine tasks with short, simple instructions. (Pl.'s Mem. at 27-29.) Plaintiff contends that "nowhere in the hypothetical" did the ALJ mention such a limitation, and, therefore, the VE's finding that the hypothetical person could perform other occupations such as an ink printer, call out operator, and surveillance system monitor was not supported by substantial evidence. (Pl.'s Mem. at 28-29.)

It is curious to the Court that Plaintiff entirely disregards the hearing testimony where the ALJ *explicitly* asked the VE if someone who was "limited to simple, routine tasks and short, simple instructions" could still perform the identified occupations. (R. at 41.) The VE responded that such a person could perform the occupations, as they were all "unskilled" positions. (R. at 41.) Accordingly, Plaintiff's argument is without merit, and the Court finds no need to address the issue further.

### D. Plaintiff is capable of performing the occupations identified by the VE.

Finally, Plaintiff contends that the "uncontroverted evidence" establishes that a person limited to simple, routine tasks cannot perform the occupations of ink printer, call out operator, or surveillance system monitor. (Pl.'s Mem. at 29-32.) Such argument is, in essence, a restatement of Plaintiff's previous argument and is likewise without merit.

Here, as already stated, the "uncontroverted evidence" establishes that the ALJ did indeed ask the VE if a person limited to simple, routine tasks with short, simple instructions could perform the identified occupations. As the VE responded in the affirmative, and several times identified the positions as "unskilled," Plaintiff's references to the Dictionary of Occupational

Titles ("DOT") does not support her contention. (R. at 40-41, Pl.'s Mem. at 29-31.) The VE referenced the DOT when issuing her opinion and the ALJ confirmed that the VE's testimony was consistent with the information contained in the DOT. (R. at 17, 40-41.) Accordingly, Plaintiff's argument is, again, without merit and entitled to no further consideration. This Court therefore recommends that the ALJ's decision should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that Defendant's motion for summary judgment (docket no. 18) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Richmond, Virginia
Date: March 22, 2011